IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| DANIEL METAGUE, on behalf of himself and all others similarly situated, | Case No: |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| MUSCLEPHARM CORPORATION C/O VCORP SERVICES, LLC 701 S. Carson St., Ste 200 Carson City, NV 89701 | |
| Defendant. | |

Plaintiff Daniel Metague ("Plaintiff Metague" or "Mr. Metague"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this action against MusclePharm Corporation ("MusclePharm" or "Defendant MusclePharm"). For his Complaint, Plaintiff alleges the following based upon personal knowledge as to his own acts and experiences and upon the investigation conducted by counsel as to all other allegations:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings claims under the Maryland Consumer Protection Act – Md. Code, Com. Law §§ 13-101, et seq. (the "MCPA") against MusclePharm as a class action on behalf of himself and all putative members of the "Class" as defined below.

2.      This action arises from the deceptive trade practices of Defendant in its manufacture and sale of nutritional powders containing branched-chain amino acids labeled "Essentials BCAA" (the "Product"), the packaging and advertising of which omits any and all mention of Calories. The Product line includes the following flavor variations: Blue Raspberry,

Watermelon, Lemon Lime, Grape, Orange Mango, and Unflavored. It is marketed as offering "ideal amounts" of certain amino acids targeted to support "muscle development and…lean body mass." Moreover, the Product is one sub-brand of the MusclePharm portfolio, which contains other similar products (*e.g.,* "Essentials BCAA Capsules," "Essentials Glutamine: Pure L-Glutamine Powder," etc.) and several dozen stock keeping units ("SKUs"), all of which have similarly, purposely misbranded calorie content of "zero Calories," or which omit caloric information altogether from their respective nutritional labels. Meanwhile, the actual calorie estimate for the Product is about ***30 Calories***, depending on formulation and use guidance, which can include multiple servings per day.

3.      MusclePharm's representations and omissions regarding the number of Calories in the Product on its labels, webpages and other marketing and advertising media and materials is purposely deceptive to create a competitive advantage against compliant competitors. However, it is the consumers that ultimately suffer by this deviant and non-compliant behavior because MusclePharm knowingly provides non-factual information and omits relevant information in an attempt to deceive and entice sales to these consumers who are seeking to purchase "zero Calorie" products conducive to weight loss and lean muscle development.

4.      Title 21 of the Code of Federal Regulations relating to nutritional labeling of food states that Calories are to be expressed to the nearest five (5) Calories on labels. *See* 21 CFR 101.9(c)(1). The Food and Drug Administration ("FDA") guidance relating to nutritional labeling of food describes several methods for estimating Calories in 21 CFR § 101.9(c)(1)(i). Of these methods, only five are relevant to the Product. These methods include (1) calories based on a per gram measurement of protein, fat, and carbohydrate of specific foods and other ingredients (this method is known as the Atwater Method); (2) calories calculated by assigning four, four, and nine

calories per gram for protein, total carbohydrate, and total fat, respectively; (3) calories calculated by assigning four, four, and nine calories per gram for protein, total carbohydrate, and total fat, respectively, but then subtracting two calories per gram for non-digestible carbohydrates and between zero and three calories per gram of sugar alcohols; (4) using data for specific food factors for particular foods or ingredients approved by the FDA; and (5) using bomb calorimetry data. *See* 21 CFR § 101.9(c)(1)(i).

5.      Furthermore, per the FDA, Calories are a "Third Group" nutrient, which means they are nutrients associated with health concerns. Accordingly, like saturated fat, cholesterol, sodium, and other Third Group nutrients, the actual Calorie level/serving must not exceed greater than 20% of labeled claim. *See* 21 CFR 101.9(g)(5)). Further, if Calories are stated in the Supplement Facts panel, actual Calories cannot be >20% of that labeled number, pursuant to 21 CFR 101.9(g)(5).

6.      Plaintiff conducted independent Calorie calculation testing of the Product, which testing revealed that the Product contained approximately 401 Calories per 100 grams. Assuming a serving size of 7.5 grams, each serving contains approximately 30 Calories – significantly more than the "zero calories" advertised and/or implied by omission. Thus, consumers in the state of Maryland, such as Plaintiff, as well as consumers across the nation, have been, and continue to be, misled into purchasing Defendant's nutritional powders with the belief that they do not contain any Calories.

7.      Plaintiff has analyzed the Product and evaluated it in accordance with each of the five methods provided by the FDA regulations and has concluded that every one of the five methods' results yield a Calorie value that exceeds the claims on the products' label by more than 20%.

8.     MusclePharm's product representations are in direct violation of FDA guidance for labeling Calories when present at levels at or above five (5) Calories/serving (*see* 21 CFR § 101.9(c)). The FDA requires marketers to declare Calories and Calorie-containing nutrients within the Nutrition Facts and Supplement Facts if they are determined to be in significant amounts. Moreover, in accordance with 21 CFR 101.60(a)(4), dietary supplements may only make nutrient content claims related to Calories when there are less than five (5) Calories per labeled serving.

9.     The FDA provides a clear (high resolution) example of labeling Calories for an amino acid-based supplement via https://www.fda.gov/media/99158/download. This FDA example, as pictured below, displays approximately four (4) grams of total amino acids, which would approximate 16 Calories and is listed as 15 based on rounding rules. The full FDA label set is included in **Appendix 1**. These labeling examples provided by the FDA remove any possibility of misunderstanding of the guidance given as such guidance pertains to this Complaint. The relevant example provided by the FDA is as follows:

| Supplement Facts | |
| --- | --- |
| Serving Size 1 Tablet | |
| Servings Per Container 50 | |
| **Amount Per Tablet** | |
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |
| * Daily Value not established. | |

Other ingredients: Cellulose, lactose, and magnesium stearate.

10.     Nonetheless, MusclePharm continued to sell its products with misleading labels despite knowing the inaccuracy of such representations. MusclePharm chose, and continues to choose, financial gain at the expense of consumers by concealing and omitting disclosure of this

critical misrepresentation to consumers who, like Plaintiff, purchased the Product based specifically upon this "zero calories" representation, for the purposes of supporting muscle development without increased Caloric intake.

11.     Plaintiff does not seek to impose requirements greater than those required by FDA regulations. Plaintiff's claims do not seek to expand upon, or call for stricter standards than, the labeling or marketing requirements of caloric content established by FDA regulations.

## PARTIES

12.     Plaintiff Daniel Metague is a citizen and resident of Montgomery County, Maryland. Beginning in or around August of 2020, Plaintiff purchased the MusclePharm Product from Amazon.com after viewing pictures of its label, which omitted all mention of Calories, implying that 0 Calories were present. However, independent testing demonstrated that the Product contained substantially more Calories than Defendant advertised on the Product's label and/or omitted from the Product's label.

13.     At no point, either during Plaintiff Metague's research on the Product or at the point of sale, did Defendant disclose that the Product actually contained significantly more Calories than the "zero calories" it inaccurately advertised and/or omitted from the Product's label.

14.     Defendant MusclePharm is a corporation with its principal office in the State of Nevada. MusclePharm makes and distributes health supplements, vitamins, and nutritional protein powders throughout the United States and, specifically, to consumers in the state of Maryland.

15.     Defendant's Product is sold on its own and other third-parties' websites, along with through various physical retailers, including Walmart and the Vitamin Shoppe. The Product is purchased by consumers for personal use and consumption in the state of Maryland and throughout the United States.

## JURISDICTION AND VENUE

16.    This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. Specifically, at least one member of the proposed class is a citizen of a different state from MusclePharm, the number of proposed Class members exceeds 100, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

17.    This Court has general and specific jurisdiction over the Defendant because Defendant MusclePharm has sufficient minimum contacts within the state of Maryland to establish Defendant's presence in the state of Maryland, and certain material acts upon which this suit is based occurred within the state of Maryland. MusclePharm does substantial business in the state of Maryland and within this District, and otherwise maintains requisite minimum contacts with the state of Maryland. Specifically, MusclePharm distributed and sold the Product in the state of Maryland.

18.    Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the state of Maryland and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, including that Plaintiff purchased and used the Product in the state of Maryland and in this District. Additionally, MusclePharm distributes the Product in this District, receives substantial compensation and profits from the sale and lease of Product in this District, and has and continues to conceal and make misrepresentations and material omissions in this District.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### *THE SALE OF UNHEALTHY CALORIE-LADEN PROTEIN POWDERS AS A DECEPTIVE TRADE PRACTICE*

19.     Each of the preceding paragraphs is incorporated by reference herein.

20.     Advertisements, packages, and labels should provide consumers with accurate information as to the nature and quality of a product's contents and should them assist in making informed decisions. When a company misrepresents material information about a product, it is deceptive and misleading to reasonable consumers.

21.     On its own website and other websites where the Product is sold, including Amazon and Walmart, MusclePharm prominently advertises and offers detailed description of the Product, claiming it supports "lean muscle mass" development and "contains zero calories." [1] For reference, some of these digital marketing images, along with direct Product labels, can be found below. Of note is the nutritional label affixed to each Product, whose image appears as a key advertising agent on many websites and prominently, which purposefully excludes any Caloric information. This packaging omission, coupled with the explicit marketing of the Product on Defendant's Amazon store that is contains "zero calories," is a deliberate message to consumers that the Calorie content of the Product is an irrelevant nutritional factor. In other words, Defendant, explicitly and/or by omission, claims that the Calorie content of the Product is zero.

---

[1] See MusclePharm-Product Page; Walmart- Product Page; Amazon-Product Page




**Product Details**                                                                    ^

## DEMAND MORE OF YOUR BODY AND YOUR BCAA.

MusclePharm® BCAA offers a unique patent-pending ratio—3 Leucine, 1 Isoleucine, 2 Valine—that is specifically tuned to deliver the ideal amounts of these three amino acids during all phases of muscle development and maintenance. Through this formulation, amino acids are released both before and after a workout. MP® BCAA minimizes muscle damage, while supporting increased lean body mass.

**Product Benefits:**

- Supports Lean Mass Growth
- Reduces Muscle Breakdown
- Increases Protein Synthesis



⌄ See more

**About this item**

- BCAA 3:1:2 PATENT-PENDING RATIO: MusclePharm BCAA Powder offers a unique patent-pending amino acid blend—3 leucine, 1 isoleucine, 2 valine—that delivers the ideal amounts of these three proteins through the body.
- SUPPORTS LEAN MUSCLE MASS: MP Essentials BCAA post-workout powder promotes muscle development and maintenance while supporting lean muscle mass and reducing muscle breakdown.
- CONVENIENT POWDER FORM: This BCAA powder mixes easily with water and contains zero calories, zero carbohydrates, and zero grams of sugar. It's sold in a delicious blue raspberry flavor.
- BANNED-SUBSTANCE TESTED: We care about the products you put into your body. MusclePharm BCAA post-workout powder is banned-substance tested and certified by Informed-Choice.
- 100% MONEY-BACK GUARANTEE: All MusclePharm products are backed by a 30-day full money-back guarantee.
- Allergen Information: Soy
- Directions: Directions For Bcaa 3:1:2: Take One (1) Serving (2 Scoops) Of Bcaa 3:1:2 Mixed Into 10-12 ounce Of Cold Water. Consume 1 Serving One To Three Times Daily. For Optimal Use, Take Between Meals, 30-45 Minutes Before Workouts, And/Or Immediately After Workouts.
- Ingredients: Other Ingredients: Malic Acid, Natural & Artificial Flavor, Sucralose, Soy Lecithin, Spirulina Powder.

Roll over image to zoom in

New (2) from $23.79 & **FREE Shipping**

"



22.     Despite MusclePharm's omission of Calories on every Product's label and the clear representations on its website and other marketing material that the Product contains "zero calories," independent laboratory testing has revealed that the Product actually contains approximately 401 Calories per 100 grams. Following MusclePharm's standard serving size recommendation of 7.5 grams, each serving contains approximately 30 Calories – far more

Calories than the "zero calories" represented and implied by omission on the Product's packaging and appearing prominently in MusclePharm's advertising and promotional materials.

23.     MusclePharm's sale of the Product deceives consumers, such as Plaintiff, because the package is materially misleading in that it includes no Caloric information and, therefore, in violation of FDA regulations, indicates the absence of any Calories per serving of its contents.

24.     MusclePharm's advertising deceives consumers, such as Plaintiff, by explicitly and prominently stating that the Product contains "zero calories" per serving.

25.     MusclePharm's sale of the Product is deceptive to reasonable consumers, including Plaintiff Metague, who are in the market for 0 Calorie products due to health and fitness considerations, because there is no practical way for consumers to know prior to purchase and consumption that the Product is laden with Calories despite being marketed as containing none per serving.

## CLASS ACTION ALLEGATIONS

26.     Under Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4), Plaintiff intends to seek certification of a Nationwide Class consisting of:

> **All persons who purchased the Product in the United States from within four years of the filing of this action through the present.**

27.     Plaintiff also intends to seek certification of a Maryland Subclass consisting of:

> **All natural persons who purchased the Product in the state of Maryland from within four years of the filing of this action through the present.**

28.     Plaintiff reserves the right to re-define the Class and Subclass at the conclusion of discovery as to class certification.

29.     Collectively, unless otherwise so stated, the above-defined Nationwide Class and Maryland Subclass are referred to herein as the "Class."

30.     Excluded from the Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them and the spouses of such persons.

### *NUMEROSITY*

31.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown and such information is in the exclusive control of Defendant, Plaintiff believes that the Class encompasses thousands of individuals who are geographically dispersed throughout the nation; therefore, the number of persons who are members of the Class are so numerous that joinder of all members in one action is impracticable.

### *COMMON QUESTIONS OF LAW AND FACT PREDOMINATE*

32.     There is a well-defined community of interest in the questions of law and fact affecting the Class members.

33.     There are questions of law and fact common to all members of each Class: specifically, Plaintiff's claims arise from the same event or practice or course of conduct by the Defendant giving rise to those claims of the putative Class, and Plaintiff's claims are based upon the same legal theories as those of the putative Class. The Defendant has engaged in a pattern and practice, in violation of the law, of misrepresenting and omitting the number of Calories in the Product. The resolution of this issue—to wit, whether Defendant knowingly sold the Product with

misleading labels and did not inform Plaintiff and Class members—is a common question of fact and law that will affect all members of the Class in the same manner.

34.     Other questions of law and fact common to the Class that predominate over questions that may affect individual members include:

    a.  The nature, scope, and operation of Defendant MusclePharm's wrongful practices;

    b.  The uniformity of the advertisements created through Defendant MusclePharm's marketing materials;

    c.  Whether MusclePharm misrepresented and omitted the number of Calories in the Product;

    d.  Whether Defendant engaged in fraudulent practices as to the Class members;

    e.  Whether MusclePharm violated state consumer protection laws by misrepresenting and concealing the number of Calories in the Product;

    f.  Whether Defendant's conduct amounts to violations of the MCPA;

    g.  Whether MusclePharm deliberately misrepresented and omitted material facts to Plaintiff and the Class members;

    h.  Whether members of the Class may be notified and warned about the contents of the Product and have the entry of final and injunctive relief compelling MusclePharm to stop its misrepresentations; and

    i.  Whether Plaintiff and the Class suffered damages because of Defendant's misconduct and if so, the proper measure of damages.

*TYPICALITY*

35.     The claims and defenses of Plaintiff Metague are representative of the Class members he seeks to represent and typical of the claims of the Class because the Plaintiff and the Class members all purchased the Product. Plaintiff, like all Class members, purchased the Product

when it was advertised by Defendant as containing "zero  Calories" and / or where the Product label omitted any Calories.

## *ADEQUACY OF REPRESENTATION*

36.    Plaintiff Metague will fairly and adequately assert and protect the interests of the proposed class because:

     a.  He has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class;

     b.  He has no conflict of interest that will interfere with the maintenance of this class action; and

     c.  He has suffered consumer-related injuries and damages.

## *SUPERIORITY*

37.    A class action provides a fair and efficient method for the adjudication of the instant controversy for the following reasons:

     a.  The common questions of law and fact set forth above predominate over questions affecting only individual Class members;

     b.  The proposed class is so numerous that joinder would prove impracticable. The proposed Class, however, is not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the Class unmanageable;

     c.  Prosecution of separate actions by individual members of the class would risk inconsistent and varying adjudications against Defendant;

     d.  The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover for the damages done to them by MusclePharm; and

     e.  A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

38.    In the alternative, the proposed Class may be certified because:

a.   the prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudication regarding individual Class members, which would establish incompatible standards of conduct for MusclePharm;

b.   the prosecution of separate actions by individual Class members would create a risk of adjudications dispositive of the interests of other Class members, not parties to the adjudications and substantially impair or impede their ability to protect their interests; and

c.   MusclePharm has acted or refused to act on grounds generally applicable to the proposed class, which justifies final and injunctive relief for the members of the proposed Class as a whole.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

39.     Defendant MusclePharm possessed exclusive knowledge about the number of Calories contained in the Product, including from its customer complaint and warranty records, internal emails, reports, analyses, and assessment of engineers, that is unavailable to Plaintiff and the proposed Class members.

40.     Throughout the time period relevant to this action, Defendant concealed the contents of the Product. As a result, neither Plaintiff nor the absent Class members could have discovered the number of Calories actually contained in the Product, even upon reasonable exercise of diligence.

41.     Despite its knowledge of the above, Defendant (a) failed to disclose, (b) concealed, and (c) continues to conceal critical information relating to the Product's caloric content, even though, at any point in time, it could have communicated this material information to Plaintiff and the Class through individual correspondence, media releases, or other means.

42.     Plaintiff and Class members relied on Defendant to disclose the number of Calories in the Product because the contents could not be discovered through reasonable efforts by Plaintiff and the Class members.

43.     Thus, the running of all applicable statutes of limitations have been suspended with respect to any claims that Plaintiff and the Class members have against Defendant as a result of Defendant's misrepresentations and/or omissions, by virtue of the fraudulent concealment doctrine.

44.     MusclePharm was under a continuous duty to Plaintiff and Class members to disclose the true nature, quality, and character of its Product. However, Defendant concealed the true nature, quality, and character of the Product, as described herein. Defendant knew about the number of Calories contained in the Product for years but concealed it and/or failed to alert purchasers or potential purchasers. Defendant maintained exclusive control over information concerning the number of Calories in the Product. Based upon the foregoing, MusclePharm is estopped from relying on any statutes of limitation or repose that might otherwise apply to the claims asserted by Plaintiff herein. in defense of this action.

## FIRST CLAIM FOR RELIEF
### Breach of Implied Warranty
**(On behalf of the Nationwide Class and, alternatively, on behalf of the Maryland Subclass)**

45.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

46.     MusclePharm sold the Product to Class members under implied warranties of merchantability and fitness. MusclePharm impliedly warranted the Product to be merchantable, fit for the ordinary purposes for which they were intended to be used (including the guarantee that they were in a safe and non-defective condition for use by their purchasers for the ordinary purpose

for which they were intended and were not otherwise injurious). MusclePharm is under a duty to design, manufacture, label, and test the Product to make them suitable for the ordinary purposes of their use—a dietary supplement that supports, and certainly should not impede, weight loss and management or lean muscle development.

47.     MusclePharm breached its implied warranties for the Product by misrepresenting the actual number of Calories contained in the Product, failing to disclose the true number of Calories contained in the Product, and otherwise inadequately marketing the product as a dietary supplement that is congruent to weight loss, weight management, and lean muscle development, thus making the Product defective, unfit for the ordinary purposes for which it was intended to be used, and not merchantable.

48.     When Plaintiff and the Class members purchased the Product, Defendant promised them a dietary supplement that (a) contained "zero Calories," (b) would be adequately labeled, (c) would pass without objection in the trade, and (d) would be fit for the ordinary purposes for which dietary supplement powders are used.

49.     Defendant knew that its Product would be purchased by consumers seeking weight loss and management or otherwise tracking Calorie intake, so it developed the Product and its related marketing and advertisements for these specific purposes. Defendant knew that the Product would be sold by retailers for use by consumers with these specific weight loss and management and dietary needs. Accordingly, direct privity is not required to bring this cause of action.

50.     Because the Product contains significantly more than the "zero calories" that were promised and represented by Defendant to Plaintiff and the Class, the Product purchased and used by Plaintiff and Class members is not merchantable. MusclePharm breached the implied warranty

of merchantability in the sale of the Product to Plaintiff and the Class members in that the Product was not fit for its ordinary purpose and not merchantable.

51.     MusclePharm has been on notice of these material omissions and/or misrepresentations through, upon information and belief, its own internal research and development process, and through the nutritional disclosures made it to by its suppliers of ingredients for the Product. MusclePharm has had the opportunity to correct the number of Calories in the Product and/or correct its misrepresentations of the Product's caloric content but has chosen not to do so. Moreover, Plaintiff has sent a notice letter to the Defendant and immediate seller seeking a remedy for the material omissions and/or misrepresentations alleged herein. When confronted with the allegations herein, neither Defendant nor the immediate seller have remedied the omissions and/or misrepresentations.

52.     As a direct and proximate result of MusclePharm's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff and Class members did not receive the benefit of their bargains.

53.     Plaintiff and Class members are entitled to damages and other legal and equitable relief, including the purchase price of the Product, overpayment, or loss of the benefit of the bargain.

<h2 style="text-align:center"><u>SECOND CLAIM FOR RELIEF</u><br>Breach of Express Warranty<br>(On behalf of the Nationwide Class and, alternatively, on behalf of the Maryland Subclass)</h2>

54.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

55.     Defendant extended, by way of the Product label, Product descriptions and representations as to the Product's qualities and characteristics, on its website, and via Product

advertisements (among other in-person and digital marketing methods, as detailed herein) express warranties to Plaintiff and Class members that the Product contained "zero Calories." These promises and representations became part of the basis of the bargain between the parties and thus constituted an express warranty.

56.    Defendant sold the Product, and Plaintiff and Class members purchased the Product, based upon these representations and express warranty.

57.    However, Defendant breached the express warranty in that the Product did in fact contain approximately 30 Calories per serving, as set forth in detail herein. As a result of this breach of the express warranty, Plaintiff and other consumers in did not receive the Product as warranted by Defendant.

58.    MusclePharm has been on notice of these material omissions and/or misrepresentations through, upon information and belief, its own internal research and development process, and through the nutritional disclosures made it to by its suppliers of ingredients for the Product. MusclePharm has had the opportunity to correct the number of Calories in the Product and/or correct its misrepresentations of the Product's caloric content but has chosen not to do so. Moreover, Plaintiff has sent a notice letter to the Defendant and immediate seller seeking a remedy for the material omissions and/or misrepresentations alleged herein. When confronted with the allegations herein, neither Defendant nor the immediate seller have remedied the omissions and/or misrepresentations.

59.    As a proximate result of this breach of express warranty by Defendant, Plaintiff and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Fraud by Omission**

**(On behalf of the Nationwide Class and, alternatively, on behalf of the Maryland Subclass)**

60.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

61.     At all relevant times, MusclePharm was engaged in the business of designing, manufacturing, and selling the Product.

62.     Defendant, acting through its representatives or agents, delivered the Product to distributors, manufacturers, and various other distribution channels.

63.     Defendant willfully, falsely, and knowingly omitted material facts regarding the quality and character of the Product.

64.     Rather than disclosing material facts to Class members, including but not limited to, the fact that the Product does not contain "zero Calories," MusclePharm concealed material information related to the Product's Calorie content and continued manufacturing and selling the Product without making any disclosures.

65.     MusclePharm omitted and misrepresented the number of Calories in the Product to drive up sales and maintain its market power, since MusclePharm knew consumers would not purchase the Product (or would pay substantially less for the Product), had the Product's true caloric content been advertised and represented to consumers.

66.     Consumers could not have discovered the actual contents of the Product on their own. MusclePharm was in exclusive possession of such information.

67.     Although Defendant MusclePharm had a duty to ensure the accurate representation of its Product and to ensure accuracy of information regarding the Product's health benefits, it did not fulfill these duties.

68.     Plaintiff and Class members sustained injury due to the purchase of the Product containing more than the "zero calories" advertised by Defendant. Plaintiff and Class members are entitled to recover full refunds for the Product, or they are entitled to damages for loss of the benefit of the bargain or the diminished value of the Product, amounts to be determined at trial.

69.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and Class members; and to enrich themselves. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future. Punitive damages, if assessed, shall be determined according to proof at trial that Defendant's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights, and in part to enrich itself at the expense of consumers. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## FOURTH CLAIM FOR RELIEF
### Equitable Injunctive and Declaratory Relief
**(On behalf of the Nationwide Class and, alternatively, on behalf of the Maryland Subclass)**

70.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

71.     MusclePharm is under a continuing duty to inform its customers of the nature and existence of Calories in the Product that it has sold.

72.     Plaintiff, members of the Class, and members of the general public will suffer irreparable harm if MusclePharm is not ordered to cease misrepresenting and omitting material information regarding the number of Calories contained in the Product.

73.     Injunctive relief is particularly necessary in this case because: (1) Plaintiff and the absent Class members desire to purchase products with the same qualities and attributes as

Defendant advertised the Product to have; (2) if Defendant actually manufactures the Product with the amount of Calories advertised, Plaintiff and Class members would purchase the Product; (3) Plaintiff and Class members do not have the ability to determine whether Defendant's representations concerning the Product will be truthful if they purchase the Product.

74.     Despite Plaintiff's and Class members' desire to purchase the Product in the future, they expect that Defendant will continue to misrepresent or conceal the amount of Calories in the Product and they will thus suffer harm that cannot be adequately remedied by the additional claims for damages alleged herein.

### FIFTH CLAIM FOR RELIEF
**Violation of the Maryland Consumer Protection Act ("MCPA")**
**Md. Code Ann., Commercial Law § 13-101, et seq.**
**(On behalf of the Maryland Subclass)**

75.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

76.     MusclePharm is a person as defined by Md. Comm Code § 13-101(h),

77.     MusclePharm's conduct as alleged herein relates to "sales," "offers for sale," or "bailment" as defined by Md. Comm. Code § 13-101(i) and § 13-303.

78.     Plaintiff and Class members who purchased the Product are "consumers" as defined by Md. Comm Code § 13-101(c).

79.     MusclePharm advertises, offers, or sells "consumer goods" as defined by Md. Comm. Code § 13-101(d).

80.     The MCPA prohibits the use of any "unfair or deceptive trade practice" in the sale or lease of any consumer goods or services.

81.     MusclePharm engaged in unfair and deceptive trade practices, in violation of Md. Comm. Code § 13-301, including (a) false or misleading oral or written representations that have

the capacity, tendency, or effect of deceiving or misleading consumers; (b) representing that consumer goods or services have a characteristic that they do not have; (c) representing that consumer goods or services are of a particular standard, quality, or grade that they are not; (d) failing to state a material fact where the failure deceives or tends to deceive; (e) advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered; (f) deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale lease or rental.

82.     MusclePharm violated the MCPA by mispresenting, concealing, suppressing, or omitting material facts regarding the Product, including, but not limited to, the number of Calories it contains. This concealed or omitted information is the type of information upon which a consumer would be expected to rely on in deciding whether to purchase or how much to pay for the Product.

83.     MusclePharm mispresented, concealed, suppressed or omitted these material facts in conducting trade and commerce with the intent that Plaintiff and the Maryland Subclass members would rely on the omissions in the purchase of the Product.

84.     To this day, MusclePharm continues to violate the MCPA by actively mispresenting or concealing the number of Calories in the Product.

85.     MusclePharm intended that Plaintiff and the Maryland Subclass members would rely on its misrepresentation, concealment and/or omission of material facts, which occurred in the course of conduct involving trade and commerce.

86.     Defendant's practices, acts, policies, and course of conduct violated MCPA's prohibition on unfair and deceptive conduct in the following ways:

a.  At the time of sale, Defendant knowingly and intentionally misrepresented and omitted the number of Calories in the Product;

b.  Thereafter, Defendant failed to disclose its misrepresentations to Plaintiff and the Class members, either through warnings or recall notices, and/or actively concealed from them that the Product contained more than "zero Calories," even though the company knew of the contents of the Product at the time of manufacture, when it created the recipe for the Product; and

c.  Based on these and, upon information and belief, other internal studies and investigations, Defendant knew with certainty that it was misrepresenting the contents of the Product.

87.     Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Product to the consuming public, representing that it would serve its intended purpose as a dietary supplement to lose weight and/or aid in weight and muscle management. Moreover, Defendant represented that the Product was merchantable and not defective, despite Defendant's knowledge that the Product did not contain the advertised number of Calories.

88.     Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, and material omissions, concealed the true nature of the Product.

89.     Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit and are injuries of a nature that they could not have been reasonably avoided by consumers.

90.     As a direct and proximate result of these unfair acts or practices, Plaintiff and Class members have been damaged because they purchased a Product they otherwise would not have,

paid more for a Product than they otherwise would have, and are left with a Product of diminished value and utility because of the number of Calories it actually contains. Meanwhile, MusclePharm has sold more of the Product than it otherwise could have and charged inflated prices for the Product, thereby unjustly enriching itself.

91.     Plaintiff and the Maryland Subclass members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, and attorneys' fees and costs.

92.     Plaintiff and the Maryland Subclass members also seek appropriate equitable relief, including an order requiring MusclePharm to adequately disclose the contents of the Product and an order enjoining MusclePharm from misrepresenting the Product as containing "zero Calories."

**SIXTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On behalf of the Nationwide Class and, alternatively, on behalf of the Maryland Subclass)**

93.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

94.     To the extent that there is any determination made by the Court that Plaintiff does not have standing to assert any contractual claims asserted against MusclePharm on the alleged basis of an absence of contractual privity or otherwise, this claim is asserted in the alternative.

95.     By its wrongful acts and omissions described herein, including selling the Product with more than the "zero calories" advertised or implied, MusclePharm was unjustly enriched at the expense of Plaintiff and the Class.

96.     Plaintiff and Class members purchased a Product they otherwise would not have, paid more for a Product than they otherwise would have, and are left with a Product of diminished value and utility because of the number of Calories it actually contains. Meanwhile, MusclePharm

24

has sold more of the Product than it otherwise could have and charged inflated prices for the Product, thereby unjustly enriching itself.

97.    Thus, Plaintiff and the Class members conferred a benefit upon MusclePharm by purchasing the Product at the full price. Under the circumstances, it would be inequitable for MusclePharm to retain the profits, benefits, and other compensation obtained through its wrongful conduct in manufacturing, marketing and selling the Product to Plaintiff and Class members based on the misrepresentation or omission that the Product contains "zero Calories."

98.    Plaintiff and Class members are entitled to damages in the amount Defendant was unjustly enriched, to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

   a.   For an order certifying the proposed Class and appointing Plaintiff and Plaintiff's counsel to represent the Class;

   b.   For an order awarding Plaintiff and Class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

   c.   For an order awarding Plaintiff and Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

   d.   For an order or orders requiring MusclePharm to adequately disclose the number of Calories in the Product and enjoining MusclePharm from misrepresenting that the Product contains "zero calories";

   e.   For an order awarding Plaintiff and Class members pre-judgment and post-judgment interest;

   f.   For an order awarding Plaintiff and Class members reasonable attorney fees and costs of suit, including expert witness fees; and

   g.   For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the members of the Class, hereby respectfully

demands trial by jury of all issues triable by right.

Dated: May 12, 2022                              Respectfully submitted,

Nicholas A. Migliaccio
(Maryland Federal Bar No. 29077)
Jason S. Rathod
(Maryland Federal Bar No. 18424)
412 H Street NE, Suite 302
Washington, DC 20002
Tel. (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

D. Aaron Rihn, Esq.*
Sara J. Watkins, Esq. *
Robert Pierce & Associates, P.C.
707 Grant Street
Suite 125
Pittsburgh, PA 15219
Tel. (412) 281-7229 (Tel.)
arihn@peircelaw.com

Robert Mackey, Esq. *
Law Offices of Robert Mackey
P.O. Box 279
Sewickley PA 15143
Tel. (412) 370-9110
bobmackeyesq@aol.com

* pro hac vice admission to be sought

*Attorneys for Plaintiff and Putative Class*

**Appendix 1.**



(vii) Dietary supplement of amino acids



# Supplement Facts

Serving Size 1 Tablet
Servings Per Container 50

| **Amount Per Tablet** | |
| --- | --- |
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

* Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

Highlighted Supplement Facts displays 4.19g of AAs yielding 16.7 Calories, which in turn has been rounded to 5s when less than 50. Thus, the Calorie declaration is compliant at 15. https://www.fda.gov/media/99158/download.